**Clyde M. BARTON and Nina Sessions Barton, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. C 78–0244.

United States District Court,
D. Utah, C. D.

March 6, 1979.

Milton A. Oman, Salt Lake City, Utah, for plaintiffs.

James R. Holbrook, Asst. U. S. Atty., Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, John E. B. Myers, Torts Branch, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## ORDER DISMISSING PLAINTIFFS' COMPLAINT

ALDON J. ANDERSON, Chief Judge.

Plaintiffs are suing the United States under the Federal Torts Claims Act [28 U.S.C. §§ 1346(b), 2671 *et seq.*] alleging that the defendant tortiously required plaintiffs to remove their cattle from federal range land and negligently or intentionally injured plaintiffs through an exchange of lands with the State of Utah. Defendant has filed a motion to dismiss or, in the alternative, a motion for summary judgment arguing that the plaintiff, Nina Sessions Barton, has failed to exhaust her administrative remedies; that both plaintiffs have failed to exhaust the required administrative remedies as to any claim based on an exchange of land; and that the acts of exchanging land and ordering the plaintiffs

to remove their cattle from federal property are within the discretionary function exception to the Federal Torts Claims Act. Because of the court's disposition of the case, it is necessary to address only the third argument.

The basic facts are not in dispute. Plaintiffs are ranchers engaged in raising livestock in San Juan County, Utah. For some substantial period of time, plaintiffs have been issued annual grazing licenses and permits allowing them to graze their cattle on public land. During the winter of 1976–77 and the spring of 1977, San Juan County experienced a severe drought. Fearing that the drought would lead to overgrazing on the public domain, Bureau of Land Management officials undertook to determine the condition of each grazing allotment in order to decide if livestock would have to be removed from that particular part of the range. On March 29, 1977, plaintiffs were directed to remove their cattle from the Cottonwood Allotment. After some discussion and negotiation, plaintiffs were given until the end of April to effect removal. By April 22, 1977, plaintiffs had moved all their cattle off of the allotment. Plaintiffs now allege that defendant's demand that they remove their cattle was not justified under the circumstances and, in fact, was negligent. Plaintiffs further allege that as a result of said negligence they were forced to sell their cattle at sacrifice prices.

In addition to the above claim, plaintiffs assert damage resulting from an exchange of land between the State of Utah and the United States. Plaintiffs had, for several years, held grazing licenses allowing them to graze cattle on state land. When the state and federal governments exchanged land, the property on which plaintiffs had formerly grazed cattle with state permission became federal land on which plaintiffs had no right to graze cattle. The state land created by the exchange, on which plaintiffs might have put their herd, was in an area "impossible for plaintiffs to graze." (Plaintiffs' Complaint, paragraph 7.) Plaintiffs allege that the exchange constitutes at least negligence on the part of the United

States and resulted in substantial injury to them.

The Bureau of Land Management controls the grazing of livestock on public land by virtue of the authority of the Taylor Grazing Act [43 U.S.C. § 315 et seq.]. The regulations promulgated thereunder condition grazing permits and licenses in a variety of ways including a condition which states that

> [i]n the event of range depletion resulting from drought or other causes, the grazing privileges that may be exercised under any license or permit may be reduced in whole or in part, and for such period of time as may be necessary.

43 C.F.R. § 4115.2–1(e)(5). The defendant demanded removal of plaintiffs' cattle under the authority of these regulations.

The Federal Torts Claims Act exempts the government from suit on any claim

> based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The landmark case interpreting this section is Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) in which the Supreme Court found that

> [i]t is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications, or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

Id. at 35–6, 73 S.Ct. at 968.

■ It seems clear that defendant's ordering plaintiffs to remove their cattle from public land was a discretionary act as defined by Dalehite. It was a decision made by an administrator pursuant to the purpose of the Taylor Grazing Act of managing federal land for effective livestock production. (See Chournos v. United States, 193 F.2d 321 (10th Cir.), cert. den. 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369 (1952).) It was a decision made pursuant to regulations which specifically authorized a reduction or elimination of plaintiffs' rights based on drought conditions. The regulations authorizing the government's action are clearly drafted to permit the exercise of discretion by BLM administrators. The regulations do not provide detailed instructions as to criteria to employ to determine damage or the potential for damage to the range. Nor do they include a detailed definition of when the potential for damage or actual damage has reached proportions significant enough to justify reduction or elimination of grazing rights. Instead, the regulations leave these determinations to be made in accordance with the administrator's judgment.

It is true that it is often difficult to draw the line between discretionary and ministerial duties. But

> [g]enerally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level . . . . The key is whether the duty is mandatory or whether the act complained of involved policy-making or judgment.

Jackson v. Kelly, 557 F.2d 735, 737–38 (10th Cir. 1977). It has been suggested that the distinction between the two levels be drawn by giving consideration to the character and severity of plaintiffs' injury, the existence of administrative remedies, the capacity of the court to evaluate the propriety of the official's action, and the effect of liability on the effective administration of the functions in question. Driscoll v. United States, 525 F.2d 136, 138 (9th Cir. 1975).

Under any of these definitions of discretion, the plaintiffs cannot prevail. Clearly defendant's decision involved a good deal of judgment, taking into account innumerable factors involving the condition of the range, the potential for future deterioration and inconvenience to plaintiffs. Further, the court finds that while plaintiffs may have suffered substantial injury, they did have available to them administrative remedies of which at least partial advantage was taken. Moreover, it would be extremely difficult for the court to accurately assess the propriety of defendant's decision given its complexity and relatively unique nature. Finally, the court finds that the imposition of liability under the facts here would greatly reduce the freedom government officials need in order to effectively administer a public lands program. ·

■ In addition to all of the above, the Tenth Circuit Court of Appeals has found that a grant or denial of a grazing permit is a discretionary act. *Chournos v. United States, supra; United States v. Morrell*, 331 F.2d 498 (10th Cir.), *cert. den.* 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1964). If the decision to grant a permit is discretionary based on the need for the use of judgment in the development and protection of public grazing lands, then surely the decision to reduce or eliminate grazing rights in the face of severe drought is also an exercise of discretion.

■ As to plaintiffs' claim based on the exchange of lands, the court finds that it too is excluded by § 2680(a). A decision to exchange property clearly is one involving considerations of policy and the use of judgment.

Accordingly,

IT IS HEREBY ORDERED that plaintiffs' complaint be dismissed for lack of subject matter jurisdiction. The dismissal is with prejudice.