Clyde M. BARTON and Nina Sessions Barton, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 79–1346.

United States Court of Appeals, Tenth Circuit.

Submitted Sept. 20, 1979.

Decided Nov. 20, 1979.

Rehearing Denied Dec. 26, 1979.

Milton A. Oman, Salt Lake City, Utah, for plaintiffs-appellants.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Ronald L. Rencher, U. S. Atty., Salt Lake City, Utah, Leonard Schaitman, Howard S. Scher, Attys., Appellate Staff—Civil Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before PICKETT, BARRETT and DOYLE, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought under the Federal Tort Claims Act (28 U.S.C. 1346(b)) to recover damages for the alleged unlawful acts of agents of the Bureau of Land Management (BLM) requiring the temporary discontinuance of grazing on public lands covered by existing livestock grazing permits. The trial court held that the decisions of the BLM complained of were of a discretionary nature and excluded from the Act by the provisions of 28 U.S.C. 2680(a). A motion to dismiss the action was sustained. 468 F.Supp. 962. We affirm.

The material facts are not in dispute. The Bartons were substantial ranchers in San Juan County, Utah. Their activities were devoted primarily to the raising of cattle. For many years the BLM issued them grazing rights on public lands including what was known as the Cottonwood Allotment. This permit extended into the spring of 1977. Over a period of months in 1976 and 1977 a severe drought adversely affected the grazing conditions in the area of the Cottonwood Allotment. The holders of grazing rights within the area were given notice by the BLM through news release and by letter sent to each permittee including the Bartons, stating that it might be necessary to curtail grazing on the lands.[1] BLM range managers examined the Cotton-

---

1. The letter dated February 11, 1977, contained this statement:

Range conditions and utilization on all allotments are being monitored closely. It looks as though proper utilization of livestock forage on many allotments will be reached before the end of the normal grazing season. When this occurs those licensees affected will be notified to remove their livestock from the allotment to prevent possible permanent damage to the range resource. Licensees will be allowed a maximum of ten days to remove the livestock from the allotment. Refunds of grazing fees will be made when this occurs.

wood Allotment and after discussions with the Bartons, determined that due to the drought and overgrazing further use of this allotment would cause serious and probable permanent damage to that range. The Bartons were ordered to remove their cattle from the allotment. The Bartons disagreed with the decision, claiming that the feed on the allotment was adequate to support the designated number of livestock on the land without substantial injury. Other ranchers in the area agreed with the Bartons. As a result of the BLM action, the Bartons were required to sell the livestock which used this allotment at an alleged substantial loss. As provided for in 43 U.S.C. Section 315b, the Bartons made application for a refund of the grazing fees paid.[2]

The "discretionary" provision of Section 2680(a) has been considered extensively by the courts and its purpose is well settled. The basic authority is *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Following a lengthy discussion of Section 2680(a) and its legislative history, the court said:

> It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a casual step, each action

or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

In *Jackson v. Kelly*, 557 F.2d 735, 737 (10 Cir. 1977) this court said: "Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required." See also *First National Bank of Albuquerque v. United States*, 552 F.2d 370, 374 (10 Cir. 1977), *cert. denied*, 434 U.S. 835, 98 S.Ct. 122, 54 L.Ed.2d 96. Concisely stated, the rule is that if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act. Conversely, if there is a standard by which his action is measured, it is not within the exception. The statute provides that if the act of the official is discretionary it is not actionable even though the discretion is abused.

The Taylor Grazing Act (43 U.S.C. Section 315 et seq.) was designed to stabilize, preserve and protect the use of public lands for livestock grazing purposes including the extent to which the lands may be grazed. To accomplish these purposes, the Act authorized the Secretary of the Interior to adopt such rules and regulations as were deemed necessary. *Hatahley v. United States*, 351 U.S. 173, 175, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); *United States v. Morrell*, 331 F.2d 498 (10 Cir. 1964), *cert. denied*, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86; *Chournos v. United States*, 193 F.2d 321 (10 Cir. 1951), *cert. denied* 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369.[3] The regulations so adapted are referred to as "The Federal Range Code"—43 C.F.R. 4100 et seq. The Barton permit was subject to this code.

---

2. In their brief, the appellants state that the sole issue is "whether the District Court erred in dismissing appellants suit below for lack of subject matter jurisdiction predicated on the discretionary function exception to the Federal Tort Claims Act."

3. The *Morrell* and *Chournos* cases were actions under the Federal Tort Claims Act alleging misconduct of Utah BLM officials in carrying out their duties under the Taylor Grazing Act. In each case, it was held that the Acts complained of were discretionary and not actionable.

One of the provisions under which the Barton permit was issued provided:

(5) In the event of range depletion resulting from drought or other causes, the grazing privilege that may be exercised under any license or permit may be reduced in whole or in part, and for such period of time as may be necessary.

43 C.F.R. 4115.2–1(e)(5).[4] There are no fixed standards or guides by which the effect of drought on the range forage can be assessed for the purpose of determining whether grazing should be continued on public lands. It is wholly a matter of judgment of the BLM range officials and clearly within the discretionary exception of the Federal Tort Claims Act.

Affirmed.

---

4. These provisions are now found in 43 C.F.R. 4110.3–2(a) of the 1978 compilation of the Range Code.