HOWARD ROUTH & SONS,
Plaintiff-Appellant,

v.

UNITED STATES of America, M. J. Bober Co., and Johnson, Fermelia & Crank, Inc., Defendants-Appellees.

No. 80–1127.

United States Court of Appeals,
Tenth Circuit.

Argued July 16, 1981.
Decided Dec. 18, 1981.

G. G. Greenlee, Casper, Wyo. (Robert M. Shively, Casper, Wyo., with him on the brief) of Murane & Bostwick, Casper, Wyo., for plaintiff-appellant.

Jeffrey C. Fisher (Charles E. Graves, U. S. Atty., D. Wyoming, Cheyenne, Wyo., with him on the brief), Asst. U. S. Atty., D. Wyoming, Cheyenne, Wyo., for defendants-appellees.

Before BREITENSTEIN and LOGAN, Circuit Judges, and BROWN,* Senior District Judge.

PER CURIAM.

The plaintiff below, Howard Routh and Sons, appeals from an Order of the United States District Court for the District of Wyoming dismissing the United States as a defendant in this action brought against the United States and two contractors under contract to the United States, the M. J. Bober Company, and Johnson, Fermelia and Crank, Inc. The case was brought by plaintiff under the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671 et seq. for the purpose of recovering damages for injury to real estate located in Rock Springs, Wyoming. It is alleged that the injury and damage occurred through the negligence of employees of the United States Bureau of Mines in conducting backfilling operations which were designed to fill old vacant mines lying beneath the town of Rock Springs, thereby preventing further subsidence in the area. In conducting this program, the Bureau of Mines contracted with the M. J. Bober Company to perform the actual work of mixing a sand and water slurry and injecting it into bore holes drilled at designated spots. The Bureau also contracted with Johnson, Fermelia and Crank, Inc. to provide engineering inspection services to assure that Bober complied with the Bureau's plans and specifications.

In dismissing the case the trial court found that the United States was acting in a discretionary manner in conducting the backfilling operation, and, as such, was specifically excepted from the coverage of the Federal Tort Claims Act by 28 U.S.C.A. § 2680(a).[1] The District Court further found that "jurisdiction does not lie in this Court for claims against the United States for such discretionary acts even though negligently performed and involving no abuse of discretion."

The issue presented for our review is whether or not the record before the trial court supports dismissal of the complaint against the United States.[2]

In asserting in its complaint that the United States was liable under the Federal Tort Claims Act, appellant alleged direct negligence and wrongful acts or omissions on the part of the United States; wrongful

* Honorable Wesley E. Brown, Senior District Judge, of the United States District Court for the District of Kansas, sitting by designation.

1. § 2680(a) provides in pertinent part that:
"The provisions of this chapter and section 1346(b) of this title shall not apply to—
(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

2. It appears that on March 21, 1981 the trial court entered an Order dismissing the remaining two defendants, the Johnson and Bober companies, for the reason that, with the dismissal of the United States, jurisdiction was lost for absence of diversity.

trespass, and negligent and wrongful creation of a nuisance by employees of the United States. In the motion to dismiss, the United States claimed that the allegations of negligence, trespass and nuisance were in reality claims for strict liability, a claim which is not recognized under the Federal Tort Claims Act. In briefing the motion, the United States also raised the "discretionary function" defense set out as an exception in 28 U.S.C.A. § 2680(a). Oral argument on the motion was held on November 13, 1979, and on November 28, 1979, the Order dismissing the complaint was made. Outside of the pleadings and arguments, the only facts before the trial court were those contained in five documents which were submitted at oral argument:

1. A March 18, 1974 special warranty deed from the Union Pacific Land Resources Corporation to the plaintiff Routh, setting out Routh's title to the real estate;

2. A March 28, 1976 contract between the United States and defendant M. J. Bober Company;

3. A cover letter and July 12, 1976 contract between the United States and the defendant Johnson, Fermelia & Crank, Inc.

4. Records of appropriations of the United States Congress to fund various mine void filling projects in the Rock Springs, Wyoming area; Plaintiff Routh stipulates that the money used to pay for the projects came in major part from the United States.

5. Affidavit of Wayne L. Johnson, president of the defendant Johnson, relating to work done by the firm under the federal contract. The Order of Dismissal relied upon the first four documents listed above.

It is apparent that the trial court treated the motion of the United States as a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.Proc. Since the court did consider matters outside the

pleadings, it was required to treat the motion as one for summary judgment under the provisions of Rule 56, Fed.R.Civ.Proc.[3] Under Rule 56(c), the court would not be authorized to enter a summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In determining that the activities of the Bureau of Mines were discretionary as a matter of law, and thus exempt from coverage under the Federal Tort Claims Act, the trial court relied on four cases: *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Wright v. United States*, 568 F.2d 153 (10 Cir. 1977); *Jackson v. Kelly*, 557 F.2d 735 (10 Cir. 1977); and *Barton v. United States*, 609 F.2d 977 (10 Cir. 1979).

A review of these cases, and others, reveals that the determination of whether or not a given act by the United States is discretionary, and so excluded from coverage under the Federal Tort Claims Act is very much a factual issue, depending upon evidentiary circumstances present in each individual case. The *Dalehite* case, which involved an explosion of ammonium nitrate fertilizer at Texas City, Texas in April 1947, came to the Supreme Court as a test case after full trial in the Southern District of Texas. In discussing the nature of "discretion," the Court stated, at p. 34–37 of 346 U.S., at pp. 967–68 of 73 S.Ct., at p. 1440–1441 of 97 L.Ed.:

> It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also

---

**3.** Rule 12(b) provides in pertinent part that: "... If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

In *Wright v. United States, supra,* 568 F.2d 153, *cert. den.* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117, following trial to the Court, this Circuit held that the United States was not negligent in designing and constructing a bridge in San Juan County, Utah, when the evidence disclosed that the State, due to a lack of funds, asked the Bureau of Indian Affairs to help with the construction. The state designed or approved the plans for the bridge and approach roads; it undertook all of the final paving for the bridge and approaches, and thereafter assumed full and sole responsibility for maintenance after accepting them into the state highway system. This court also found that any liability of the United States was barred by the "discretionary function" exception to the Federal Tort Claims Act under § 2680(a), supra, since action by the United States was "in the execution of a statute," namely 23 U.S.C.A. § 208 which provided that funds for Indian reservations could be used for the cost of construction and improvement of roads and bridges.

*Jackson v. Kelly, supra,* 557 F.2d 735, was a malpractice action brought against an Air Force physician. This court held that the discretionary function exception did not apply to medical treatment because " '(i)t is manifestly plain that the alleged acts of negligence, while involving skill and training, were non-discretionary.' "

The "discretionary issue" in *Barton v. United States,* 609 F.2d 977 (10 Cir. 1979) involved a decision of the Bureau of Land Management which required the temporary discontinuance of grazing on public lands, due to drought conditions. The trial court dismissed the action upon the ground that the decision was of a discretionary nature, exempt from inclusion in the Federal Tort Claims Act. In affirming this decision, we noted that the material facts were not in dispute, and that, since there were no fixed standards for assessing the effect of drought on range forage, determinations regarding grazing were entirely matters of judgment—and so, discretionary. The rule regarding discretionary functions was stated in this manner, at p. 979 of 609 F.2d 977:

> Concisely stated, the rule is that if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act. Conversely, if there is a standard by which his action is measured, it is not within the exception. The statute provides that if the act of the official is discretionary it is not actionable even though the discretion is abused.

Other cases have distinguished "operational negligence" from "discretionary functions." See *Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48, 56 (1955), (decision to erect a lighthouse was discretionary, but its maintenance once in place was operational); *Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956) (impoundment of Indian horses by federal range agents not discretionary); *Moyer v. Martin Marietta Corp.,* 481 F.2d 585 (5 Cir. 1973) (acceptance of negligently designed pilot's ejection seat not discretionary); *Rayonier Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) (negligence of Forest Service employees in allowing a fire to start on government land, and negligence in fighting the fire would be actionable under the Federal Tort Claims Act); *Seaboard Coast Line Railroad Co. v. United States,* 473 F.2d 714 (5 Cir. 1973) (design of drainage ditch which caused derailment was not discretionary).[4] In *Harris v. United*

---

4. In *Seaboard,* 473 F.2d at p. 716 the Court explained the discretionary-operational difference in this language:

"The discretionary function envisioned by 28 U.S.C. § 2680(a) and by *Dalehite* was the government's policy decision to construct an

*States*, 205 F.2d 765 (10 Cir. 1953), the United States Corps of Engineers and the Fish and Wildlife Service determined to spray a herbicide on lands controlled by the two services, in order to destroy willows and to control mosquitoes. This Circuit held that such decision was discretionary, and further found that the actual spraying was conducted by a pilot-biologist in a careful and prudent manner, and without negligence. In *Irzyk v. United States*, 412 F.2d 749 (10 Cir. 1969) a landowner sought damages for flooding which occurred because of the negligent installation of a sewer line during construction of buildings for the United States Bureau of Indian Affairs. The line had been installed by an independent subcontractor, and inspected by a federal government inspector. The case was tried to the court, and this Circuit initially remanded the case for further findings of fact concerning the negligence of the government employees. See *United States v. Irzyk*, 388 F.2d 982 (10 Cir. 1968). After full review of all of the facts disclosed at trial it was concluded that the federal inspector did not exercise such control over the sub-contractor as to make that contractor an employee of the government.

Our lengthy review of some of the cases discussing the discretionary function exemption and the status of independent contractors will serve to illustrate the factual nature of such determinations. In reviewing the complaint in this action, we note that plaintiff Routh has alleged that "the United States Bureau of Mines, by and through its employees, remained in, or exercised control of certain of the details of the work performed or to be performed." Active negligence on the part of federal employees was alleged. It was alleged that they "knew or should have known that previously conducted mine backfill programs had been the cause of subsidence," but they nevertheless inadequately designed and negligently carried out the project by failing to conduct preliminary drilling pro-

grams and geological studies; by failing to drill or cause to be drilled sufficient monitoring holes; by failing to control the mix of slurry to be pumped into the mine voids and pressures used to accomplish that pumping; and by failing to "cease operations once it became obvious that the project was causing and would continue to cause serious and irreversible subsidence." These are, of course, only factual allegations—but at this point in the case, and in the absence of any discovery proceedings, these allegations stand unrefuted. Likewise, the issue of the independence of the contractors and the amount of control and supervision exercised by the federal government depends upon the resolution of contested facts, for what the contracts may have stated upon their face is not necessarily the manner in which the work was conducted. In this respect, the affidavit of Wayne L. Johnson, president of Johnson-Fermelia & Crank, Inc. sets out a somewhat limited version of the actual authority of that firm in connection with its "inspection" or "supervision" duties:

4. That under the terms and provisions of said contract, the duties of this defendant were that of specific monitoring services, including inspection of the work and verification of work completed by the contractor; identifying and notifying the Bureau of Mines, including the authority to stop work, due to any potential health and safety hazards; perform periodic borehole monitoring measurements with Bureau provided equipment; continuous inspection including calibration checks; conveying Bureau work directives to the prime contractor as necessary and directed by the Bureau; and take photographs of the work progress.

5. That under the terms of the aforesaid contract, this defendant had no authority to do other than make observations of the work of the contractor and to make reports to the Bureau of Mines, and had no authority to institute work or to

---

aircraft maintenance facility at Fort Rucker and to build a drainage system in furtherance of that goal. Once the government decided to build a drainage ditch, it was no longer

exercising a discretionary policy-making function and it was required to perform the operational function of building the drainage ditch in a non-negligent manner."

change work. That this defendant did have authority to stop work, and did exercise that authority, and in such cases work was not resumed until direct instructions to resume work were received from the Bureau of Mines.

Because we are unable to find that the pleadings and documents before the district court show that there is no genuine issue as to any material fact concerning the independence of the contractors involved in the project, concerning the presence or absence of any operational negligence on the part of the defendant United States, or concerning the discretionary nature of the activities of the United States in connection with the Rock Springs project, the Order dismissing the United States as a defendant is Reversed and the case is Remanded to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.