Ralph W. STATON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 80-1744.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1982.
Decided June 10, 1982.

Paul Reiber, Rutland, Vt., for appellant.

E. Montgomery Tucker, Asst. U. S. Atty., Roanoke, Va. (John S. Edwards, U. S. Atty., Roanoke, Va., on brief), for appellee.

Before WINTER, Chief Judge, and ERVIN and CHAPMAN, Circuit Judges.

ERVIN, Circuit Judge:

Ralph W. Staton brought this action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, to recover damages for the loss of three hunting dogs shot by a park ranger in the Shenandoah National Park. The district court held that the government was exempt from liability under 28 U.S.C. § 2680(a) of the Federal Tort Claims Act because the park ranger had performed a discretionary act under 36 C.F.R. § 2.8(d).

We find that shooting the dogs was not a discretionary act and hold, therefore, that the government is not exempt from liability under the "discretionary function" clause of § 2680(a). The government is exempt from liability under § 2680(a), nonetheless, if the park ranger was "exercising due care, in the execution of a statute or regulation" when he shot the dogs. Because it is unclear whether the district court considered the issue of negligence, we reverse and remand with instructions to make findings on that issue.

## I.

### A.

Shenandoah National Park is a wildlife sanctuary located in northern Virginia. Congress has authorized the Secretary of the Interior to promulgate regulations necessary "for the protection of the property therein, especially ... for the protection of the animals and birds in the park from capture or destruction, and to prevent their being frightened or driven from the said park ...." 16 U.S.C. § 403c–3. Pursuant to this congressional grant of authority, the Secretary promulgated 36 C.F.R. § 2.8, which provides in pertinent part:

(a) Dogs, cats and other pets are prohibited unless they are crated, caged, or on a leash, or otherwise under physical restrictive control at all times.

(d) Dogs, cats or other pets running at large and observed by an authorized person in the act of killing, injuring or molesting humans or wildlife may be disposed of in the interest of public safety and protection of wildlife.

Despite authorization to dispose of unleashed dogs endangering wildlife in the park, it has been the practice of the Park Service to capture and impound dogs rather

than shoot them. On November 2, 1977, the opening day of bear hunting season and the day on which the events giving rise to the present action occurred, the Park Service distributed a leaflet on which 36 C.F.R. § 2.8(a) and (d), and the following note were printed:

Dogs observed in the Park, chasing any animals will be caught and impounded. Capture methods will be by hand or dart injected tranquilizer drugs. All such dog owners will be cited and subject to fees under Section 5.11.

Although field ranger personnel were responsible for printing and distributing the leaflet, higher officials had approved it.[1]

### B.

Ralph W. Staton was among a group of sportsmen bear hunting on private land bordering the Shenandoah National Park. Two packs of dogs, including three dogs belonging to Mr. Staton, entered the park and began chasing a small bear.[2] Park Ranger Douglas M. Bowen was driving a park vehicle in the area and heard the chase. When the dogs came into sight, Ranger Bowen tried to divert them by yelling. When they continued to pursue the bear, he shot and killed the three dogs belonging to Mr. Staton.[3]

Mr. Staton subsequently brought an action against the United States under the Federal Tort Claims Act to recover damages for the loss of his three hunting dogs. He alleged that Ranger Bowen was negligent in shooting the dogs because they were not in hot pursuit of the bear. He also contended that shooting the dogs was not a discretionary act because Ranger Bowen had acted contrary to the Park Service practice of capturing and impounding unleashed dogs. Mr. Staton relied on the leaflet and the fact that a hunting dog had not

been shot in the park for over twenty years to establish that the Park Service had a policy against shooting dogs.

The district court held that the government was exempt from liability under 28 U.S.C. § 2680(a) of the Federal Tort Claims Act because the park ranger had performed a discretionary act under 36 C.F.R. § 2.8(d) and, further, that he had not acted negligently in shooting the dogs. The decision of the district court was based on its findings that the dogs were in hot pursuit of a small black bear in violation of 36 C.F.R. § 2.8(d) and that Ranger Bowen had shot the dogs in good faith only after he had attempted to divert them by yelling. The district court also found that the leaflet distributed by the Park Service did not alter the result in the case because Mr. Staton was not aware of the leaflet when his dogs entered the Park and, therefore, could not show reliance.

### II.

Section 1346(b) of title 28 of the United States Code authorizes suits against the United States for property damage caused by the negligent or wrongful acts of government employees acting within the scope of their employment. Section 2680(a) of the Federal Tort Claims Act, however, expressly exempts the United States from liability as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a

---

1. Chief Ranger Larry L. Hakel or Superintendent Robert R. Jacobsen had indicated to the park rangers that dogs were to be tranquilized or captured by hand rather than shot.

2. Shortly before hunting season opened, the Park Service issued a media release informing the public it planned to defend its borders against illegal activity. Hunters occasionally

had been sending their dogs into the park to chase game out onto private land where the game could be taken legally. That does not appear to be the case here.

3. Ranger Bowen did not have a tranquilizer gun with him at the time. He shot the first two dogs with his personal shotgun and the third dog with his service revolver.

discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

The government, therefore, is not liable for the loss of the dogs, and we must affirm the decision of the district court, if Ranger Bowen either was "exercising due care in the execution of a statute or regulation," or was "perform(ing) a discretionary function or duty." *See Hatahley v. United States*, 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956); *Bernitsky v. United States*, 620 F.2d 948 (3d Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).

### A.

In *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the leading case regarding the "discretionary function" exception of the Federal Tort Claims Act, the Court concluded that

> (T)he "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

*Id.* at 35–36, 73 S.Ct. at 967–968 (footnotes omitted).

Courts have experienced considerable difficulty in applying *Dalehite* to determine whether particular actions are within the discretionary function exception. *See Bernitsky v. United States*, 620 F.2d 948, 951 (3d Cir.), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980); *Downs v. United States*, 522 F.2d 990, 996 (6th Cir. 1975); *Depass v. United States*, 479 F.Supp. 373, 375 (D.Md.1979). In attempting to define and distinguish decisions made at the "planning level" from those made at the "operational level," *see Dalehite, supra*, at

42, 73 S.Ct. at 971, courts have focused upon "the nature and quality" of the judgment involved. *See Downs v. United States, supra*, at 997 (citing *Smith v. United States*, 375 F.2d 243, 246 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967)); *Griffin v. United States*, 500 F.2d 1059, 1064 (3d Cir. 1974). As the court in *Downs v. United States* recognized, "Judgment is exercised in almost every human endeavor. It is not the mere exercise of judgment, however, which immunizes the United States from liability for the torts of its employees." 522 F.2d at 995. Although it is difficult to articulate a comprehensive standard for determining whether a particular judgment falls within the discretionary function exception, the test set forth in *Barton v. United States*, 609 F.2d 977 (10th Cir. 1979), provides guidance. In *Barton*, the court concluded that

> Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required. Concisely stated, the rule is that if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act.

609 F.2d at 979 (citations omitted). *Accord, Depass v. United States*, 479 F.Supp. 373, 377 (D.Md.1979).

■ The issue before us is whether shooting the dogs pursuant to 36 C.F.R. § 2.8(d) was a discretionary act. Section 2.8(d) provides that "Dogs . . . running at large and observed by an authorized person in the act of killing, injuring or molesting humans or wildlife *may* be disposed of in the interest of public safety and protection of wildlife." (emphasis added). The use of the word "may" in the regulation suggests that park rangers were intended to have discretion in applying the regulation. The Park Service, however, routinely has captured and impounded dogs running loose in the Park. A

hunting dog has not been shot in the Park for over twenty years. The policy against shooting dogs was reflected in the leaflet distributed by the Park Service wherein it expressly was stated that "Dogs observed in the Park, chasing any animals will be caught and impounded."

Although field ranger personnel were responsible for printing and distributing the leaflet, higher officials had indicated that dogs were to be tranquilized or captured by hand rather than shot. The "discretionary function," which is exempt from tort liability under 28 U.S.C. § 2680(a), was exercised by Ranger Bowen's superiors when they made a policy decision to capture rather than shoot dogs. By establishing such a policy, Ranger Bowen's superiors had interpreted 36 C.F.R. § 2.8(d) in such a manner that field ranger personnel no longer had discretion because "a fixed or readily ascertainable standard" had been established. *See Barton, supra,* at 979. We find, therefore, that shooting dogs did not fall within the discretionary function exception to the Federal Tort Claims Act.

### B.

The first clause of 28 U.S.C. § 2680 provides that the government is not liable under the Federal Tort Claims Act for "an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid . . . ." It is clear that Ranger Bowen is a government employee and that he shot the dogs pursuant to a regulation. The only remaining question is whether he exercised due care in shooting the dogs. Because we are unable to determine from the record whether the district court considered the question of due care, we remand for a determination on this issue.[4]

4. We note that in its pleadings the government raised contributory negligence as an affirmative defense to a finding of negligent conduct by Ranger Bowen. Because contributory negligence is a bar to recovery for negligence in Virginia, *see, e.g., Flakne v. Chesapeake & Potomac Telephone Company,* 199 Va. 31, 34, 97

### III.

Although the government is not exempt from liability under the "discretionary function" clause of 28 U.S.C. § 2680(a), it, nonetheless, is exempt from liability under § 2680(a) if Ranger Bowen was "exercising due care, in the execution of a statute or regulation." Accordingly, we reverse and remand this case to the district court for a determination on the issue of negligence.

S.E.2d 650, 652 (1957), and because the United States is liable only to the extent that a private citizen would be liable under Virginia law, *see* 28 U.S.C. § 1346(b); *Downs v. United States,* 522 F.2d 990, 999 (6th Cir. 1975), the district court also should consider the issue of contributory negligence on remand.