770 F.2d 890
 Eugene L. TAITT and Mary E. Taitt, Plaintiffs-Appellants,
v.
UNITED STATES of America, William Hall, Director of United
States Marshal's Service, Howard Safir, Assistant Director
for Operations United States Marshal's Service, Gerry Shur,
United States Department of Justice, and Director and
Administrator of Federal Witness Protection Program (Witness
Security Program), Certain Other Officials of the Bureau of
Prisons of the United States unknown at this time, et al.,
Marion Albert Pruett, Certain Other Unknown Defendants,
Defendants-Appellees.
 No. 83-2142.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 14, 1985.
 
 George C. Aucoin and Frank Carrington of Hackethal McNeill & Aucoin, Lakewood, Colo. for the plaintiffs-appellants.
 Robert N. Miller, U.S. Atty., and John R. Barksdale, Asst. U.S. Atty., Denver, Colo., for defendants-appellees.
 Before BARRETT, BREITENSTEIN and TIMBERS*, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This is an action brought by appellants-plaintiffs against the United States and various of its officers, agents, and employees for violation of the Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b). The district court granted a motion to dismiss filed by the defendants. We affirm in part and reverse in part.
 
 
 2
 Appellants' son, Anthony Taitt, was murdered on October 16, 1981, by Marion Albert Pruett. Pruett pled guilty to the murder and was sentenced to life imprisonment.
 
 
 3
 In 1971, Pruett was sentenced to serve a 15-year term for bank robbery. R. 71. In 1975, he was sentenced to a second 15-year term for an armed robbery committed while on "furlough" from his place of confinement. He was placed in the federal penitentiary at Atlanta, Georgia. R. 72. In 1978 Pruett's cellmate, one Zambito, was murdered. Pruett was authorized emergency protection as a prisoner witness by the Office of Enforcement Operations of the Criminal Division of the Department of Justice because of information he passed to authorities concerning the murder of his cellmate. One Benton was convicted of conspiring to murder Zambito after a trial in which Pruett testified as a government witness. In September, 1979, Pruett was placed on parole and in November, 1979, he became a federally protected witness under the Federal Witness Protection Program (WPP). R. 72; Tr. Vol. III, pp. 29-30; Tr. Vol. IV, p. 121; Appellees' Brief, p. 2.
 
 
 4
 The United States Marshals Service relocated Pruett and his financee in Rio Rancho, New Mexico, under the assumed names of Sonny and Michelle Pearson. R. 73. On March 1, 1981, Michelle Pearson got in touch with Reuben Chavez, a Deputy United States Marshal responsible for the security of government witnesses in New Mexico, expressing fear for her life because of threats made by Pruett. Chavez made arrangements to see Pearson at 4:00 p.m. on March 3, 1981. Id. at 30. She disappeared on March 2, 1981. Her body was later discovered in the desert in Sandoval County, New Mexico, on April 17, 1981. R. 74. Pruett was detained by Sandoval County Sheriff Ferrara for questioning. During this detention Chavez told Ferrara of his March 1, conversation with Pearson but did not reveal Pruett's status as a protected federal witness or his past record. A New Mexico court released Pruett on the ground of insufficient evidence. Id. Upon his release, Pruett terminated his participation in the WPP and left New Mexico on June 1, 1981. Pruett killed Anthony Taitt on October 16, 1981, and received a life sentence for the murder.
 
 
 5
 On October 15, 1982, appellants brought this suit against the United States, various of its officials, and Pruett. In their first claim for relief under the Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b), they allege that the defendants negligently: (1) failed to provide the Board of Parole with required information before Pruett's release on parole of his violent propensities; (2) that the federal officials negligently rendered psychiatric treatment to Pruett after having once undertaken to render such treatment; (3) admitted Pruett into the WPP with knowledge of his past violent behavior; (4) failed to take immediate action upon the threats to Pearson's life; and (5) failed to advise Sheriff Ferrara of Pruett's background and record during the investigation of Pearson's murder. In their second claim for relief appellants allege violations of the civil rights act, 42 U.S.C. Sec. 1983. This claim has now been dropped. See Docketing Statement, pp. 12-13. On the motion of the appellants Pruett was dismissed as a defendant. R. 67.
 
 
 6
 In considering the district court's dismissal of the appellants' complaint, we are bound by the decision of the Supreme Court in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80, that:
 
 
 7
 "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."
 
 
 8
 On March 10, 1983, the district court stayed any further discovery in the case except for the taking of Pruett's deposition. Tr. Vol. II, p. 46. Pruett's deposition was taken at the Mississippi State Penitentiary on March 23, 1983. At the time Pruett was under a death sentence in Mississippi. Pruett v. State, Miss., 431 So.2d 1101, cert. denied, --- U.S. ----, 104 S.Ct. 201, 78 L.Ed.2d 176. At the deposition Pruett testified that he had killed Zambito and that the government knew it. Deposition, pp. 102-110, 115-116, 118.
 
 
 9
 The Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b), waives sovereign immunity to permit suits against the United States for personal injury or death caused by the tortious actions of any government employee "while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." An exception to Sec. 1346(b) exists for claims based on "the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. Sec. 2680(a). We must determine whether the actions of the defendants were discretionary in order to determine whether the defendants are immune under Sec. 1346(b). Jackson v. Kelly, 10 Cir., 557 F.2d 735, 737.
 
 
 10
 Appellants claim that the defendants admitted Pruett into the WPP with knowledge of his past violent behavior, without a psychological evaluation, and without prior notification to law enforcement officials regarding his release. Selection of an individual for the WPP is one that is within the discretion of the Attorney General by statute. See Title V of the Organized Crime Control Act of 1970, Secs. 501-504, Pub.L. 91-452, 1970 U.S.Cong. & Admin.News 1086-1087. Section 501 authorizes the Attorney General to provide for the security of government witnesses. Section 502 authorizes the Attorney General to provide protection for such person,
 
 
 11
 "whenever, in his judgment, testimony from, or a willingness to testify by, such a witness would place his life or person, or the life or person of a member of his family or household, in jeopardy. Any person availing himself of an offer by the Attorney General to use such facilities may continue to use such facilities for as long as the Attorney General determines the jeopardy of his life or person continues."
 
 
 12
 The only guiding criteria for admission to the WPP program on the face of the statute is that the Attorney General determine that the witness or his family to be in danger as a consequence of his testimony. Such a decision is within the Attorney General's discretion. Bergmann v. United States, 8 Cir., 689 F.2d 789, 793. The only other criterion the Attorney General is required to consider is whether the protection of the witness is advantageous to the Federal interest. It is mandated by internal Justice Department policy. See Justice Department Order OBD 2110.2(6)(a)(3) reprinted in Witness Protection Program: Hearings Before the Subcomm. on Administrative Practice and Procedure of the Senate Jud. Comm., 95th Cong., 2d Sess. 134-135. The determination whether the protection of a witness is advantageous to the Federal interest involves a discretionary decision. Bergmann, supra, 689 F.2d at 793. There is no requirement that the Attorney General evaluate a witness' past behavior or perform a psychological evaluation of a witness before placing the individual into the WPP. The selection of a witness is one that involves judgment and discretion. Being discretionary it falls within Sec. 2680(a).
 
 
 13
 Appellants also allege that the New Mexico law enforcement officials should have been notified of Pruett's release and termination from the WPP program. They rely on the telephone call which Deputy Marshal Chavez had from Michelle Pearson and his call to Sheriff Ferrara. They say that if Pruett had been held in New Mexico for Pearson's murder, he would not have been released to kill their son. No statute or regulation requires prior notification by law enforcement officials before a federally protected witness with a criminal record is released. The purpose of the WPP is to provide anonymity for government witnesses through relocation. As said in Bergmann, supra, 689 F.2d at 797, "[T]he plain and simple fact is that witness protection statutes contemplate only the protection of witnesses and their families--not protection of the public from the witnesses." Absent some statute or regulation requiring disclosure, the decision not to inform law enforcement officials of Pruett's release is within the discretionary function exemption. Chavez's decision to see Pearson on March 3, 1981 rather than take immediate steps to protect her was a discretionary decision. Id. at 795. The district court correctly held that it did not have jurisdiction over the claims asserted under the WPP.
 
 
 14
 This brings us to a consideration of the question of responsibility of various government officials to the United States Parole Commission created by 18 U.S.C. Sec. 4202 and given the powers mentioned in Sec. 4203. The government concedes that Pruett was placed on parole in September, 1979, and became a federally protected witness under the WPP in November, 1979. See Appellees' Brief, p. 2. At the time of his release under parole he was in the Atlanta penitentiary on a bank robbery charge.
 
 
 15
 In their amended complaint the appellants do not charge the United States Parole Commission or its members as defendants. R. 22. They charge only the officials connected with the Bureau of Prisons and others. The decision to release Pruett on parole was discretionary. United States v. Addonizio, 442 U.S. 178, 188, 99 S.Ct. says: "The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission."
 
 
 16
 Section 4205(e), enacted in 1976, provides:
 
 
 17
 "Upon request of the (Parole) Commission, it shall be the duty of the various probation officers and government bureaus and agencies to furnish the Commission information available to such officer, bureau, or agency, concerning any such eligible prisoner or parolee and whenever not incompatible with the public interest, their views and recommendation with respect to any matter within the jurisdiction of the Commission."
 
 
 18
 The Fifth Circuit considered a similar situation in Payton v. United States, 5 Cir., 679 F.2d 475, 482 and held that under the former 18 U.S.C. Sec. 4208(c) the duty of the Bureau of Prisons to provide records was not discretionary. Former Sec. 4208(c) was similar to Sec. 4205(e), passed in 1976, with the exception that former Sec. 4208(c) did not contain the words, "[u]pon the request of the Commission." The district court held that the amendment of the statute controlled and dismissed the complaint for failure to state a claim. R. 157-158. The district court reasoned that, "the statute does not impose an unconditional duty upon government officers or entities to provide the Commission with the records of an eligible prisoner; on the contrary, the duty is conditioned upon 'request of the Commission' which, in turn, implicates the Commission's discretionary function in acquiring, examining or considering such records." R. 158. If appellants had been suing the Parole Commission for negligently failing to acquire records concerning Pruett, the district court's analysis would have been correct. Appellants' complaint is not directed at the Parole Commission but at various government officials who have a mandatory duty to provide records and information to the Parole Commission upon request. Once such request is made, no discretion is involved. See Payton, supra, 679 F.2d at 482.
 
 
 19
 The Supreme Court has considered the question of what constitutes a discretionary function or duty. See Dalehite v. United States, 346 U.S. 15, 35-36, 73 S.Ct. 956, 968, 97 L.Ed.2d 1427; Indian Towing Co. v. United States, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed.2d 76; and Rayonier, Inc. v. United States, 352 U.S. 315, 317-318, 77 S.Ct. 374, 375-76, 1 L.Ed.2d 354. In Howard Routh & Sons v. United States, 10 Cir., 668 F.2d 454, 456, we reviewed the Supreme Court decisions and others and said:
 
 
 20
 "A review of these cases, and others, reveals that the determination of whether or not a given act by the United States is discretionary, and so excluded from coverage under the Federal Tort Claims Act is very much a factual issue, depending upon evidentiary circumstances present in each individual case."
 
 
 21
 In the case at bar, the 1976 amendment to 18 U.S.C. Sec. 4205(e) applies and requires the government officials to furnish information concerning an eligible prisoner upon request of the Parole Commission. The action of the district court in staying any discovery, except the taking of Pruett's deposition, Tr. Vol. II, p. 46, precluded appellants from discovery of whether the Parole Commission had made any request of government officials that they furnish information regarding Pruett. If the Parole Commission had made such request, it is pertinent to learn what the response was. The statute is mandatory that, upon the request, information must be furnished. Action in this regard had a bearing on whether the government officials abused their discretion. The case is reversed and the appellants must be given the opportunity to discover whether the Parole Commission made the request and, if they did, what the response of the government officials was.
 
 
 22
 Appellants claim that the federal officials negligently rendered psychiatric treatment to Pruett after once undertaking to render such treatment. This was covered by Pruett's deposition. In 1971 he robbed a bank and was sent to Springfield to determine his competency to stand trial. He was examined there and pled guilty to the charge. The doctors at Springfield recommended to the judge that he needed help because of a drinking problem and drug abuse. The judge sentenced him to 15 years and sent him back to Springfield for further treatment. He was transferred from there to Petersburg, Virginia. While there, he received no psychiatric counselling. From there he was transferred to Ashland, Kentucky, where again he received no psychiatric counselling. He escaped from Ashland and robbed another bank and was sentenced again for bank robbery. Pruett's Deposition, pp. 21-35. Pruett's statement suffices to establish that in 1971 he was given psychiatric care by the government physicians and the care was terminated. Having undertaken the discretionary duty of rendering psychiatric care to Pruett, the appellants are entitled to know why the care was terminated. Payton v. United States, 5 Cir., 679 F.2d at 482-483.
 
 
 23
 The foregoing refers to appellants' claims (1) and (2) alleging that defendants failed to provide the Board of Parole with information before Pruett's release on parole and failed to provide psychiatric care. With respect to claims (3), (4), and (5) charging Pruett's admission into the WPP with knowledge of his violent behavior, failure of Deputy Marshal Chavez to take action on the threats to Michelle Pearson and his failure to advise Sheriff Ferrara of Pruett's background in the investigation of Pearson's murder, those actions are all discretionary with the officials in charge of the WPP program and do not constitute a basis for a claim against officials in charge of the program. The district court's holding that the claims (1) and (2) under the Tort Claims Act do not constitute tortious conduct under Colorado or New Mexico law is premature because of the denial of discovery.
 
 
 24
 Affirmed in part and reversed in part.
 
 
 
 *
 Honorable William H. Timbers, United States Circuit Judge for the Second Circuit, sitting by designation