Michael J. SUTTON and John Wiley
Mitchell, Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 85–2235.

United States Court of Appeals,
Fifth Circuit.

June 25, 1987.

Michael J. Sutton, pro se.

John Wiley Mitchell, pro se.

Linda K. Cipriani, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., C.J. (Neil) Calnan, James R. Gough, Asst. U.S. Attys., Houston, Tex., for defendant-appellee.

Before BROWN, REAVLEY, and JONES, Circuit Judges

JOHN R. BROWN, Circuit Judge:

Today, we consider the interplay between two sections of the Federal Tort Claims Act: the "discretionary function exception" of 28 U.S.C. § 2680(a), and the "law enforcement proviso" of § 2680(h). The court below incorrectly interpreted the relationship between the two when it dismissed the plaintiffs' somewhat tenuous claims of malicious prosecution because they had failed to surmount the hurdle of the discretionary function exception. Because the trial court lacked the precise facts on which to base its decision, we reverse and remand.

### An Evil Deed, a Forged Deed

In 1975, Frank Van Breeman executed a real estate deed in favor of plaintiff John Mitchell in the presence of plaintiff Michael

Sutton.[1] In 1976, Van Breeman contended that his signature was a forgery and filed a mail fraud complaint with the United States Postal Service. Curtis Woodard, a Postal Service investigator, was assigned to the case.

Sutton and Mitchell contend that, in the course of his investigation, Woodard systematically suppressed evidence favorable to them and manipulated the remaining evidence so as to convince various state and federal prosecutors to pursue indictments against them for criminal fraud. Four separate indictments of Sutton and Mitchell were handed down by a Harris County Grand Jury; all four indictments were subsequently dismissed. Woodard also presented the case to three Assistant United States Attorneys, each of whom declined to institute proceedings against Sutton and Mitchell.[2]

Sutton and Mitchell eventually filed suit against the United States under the terms of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680. They claimed that they were injured by the actions of Inspector Woodard in conducting his investigation. Their complaint alleges that they had been the victims of malicious prosecution, false arrest, and abuse of process. They sought to proceed under 28 U.S.C. § 2680(h), which waives the sovereign immunity of the United States for acts or omissions of its law enforcement officers which give rise to claims of assault, battery, false imprisonment, abuse of process, or malicious prosecution.[3]

The government moved to dismiss the complaint on the grounds that the court lacked subject matter jurisdiction.[4] It contended that Investigator Woodard's acts fell within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), which provides that the sovereign immunity of the United States is not waived for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency."[5] The government further argued that because the law enforcement proviso of § 2680(h) does not stand alone, it is insufficient to render the claims in this case actionable.

The District Court agreed with the government and dismissed the case. In doing so, it relied heavily upon *Gray v. Bell*, 712 F.2d 490 (D.C.Cir.1983), a case in which the District of Columbia Circuit held that actions under the "law enforcement proviso" must surmount the hurdle of the discretionary function exception before

---

1. This somewhat abbreviated version of the allegations has been taken from the complaint and from the Appellant's Brief.

2. The Van Breeman deed, which was at the heart of this imbroglio, was eventually declared to be valid by the Louisiana courts.

3.

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> . . . . .
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title [28 USC § 1346(b)] shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement

officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).

4. It is past disputing that a claim within the ambit of the discretionary function exception is insufficient. *See Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *see also* note 6 *infra.*

5.

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

they present a jurisdictional claim [6] under the FTCA. Sutton and Mitchell appeal, contending that the District Court erred in its interpretation of the interplay between the two statutory provisions.

### Plowing the Ground:
### An Initial Look at the
### Statutory Language

The FTCA is a general waiver of the sovereign immunity of the United States Government to suit in the federal courts. It was designed "to afford easy and simple access to the federal courts for persons injured by the activities of government" without the need to resort to private bills for the purpose of obtaining compensation. *Collins v. United States*, 783 F.2d 1225, 1233 (5th Cir.1986) (Brown, J., concurring). This design for simplicity, however, is rendered more intricate by the numerous exceptions and provisos to the waiver that are found in § 2680.

This case involves two of those intricate provisions. The first, the discretionary function exception, § 2680(a), retains sovereign immunity against

> [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused.

The second is the law enforcement proviso, a 1974 amendment to § 2680(h) constituting a limited waiver of sovereign immunity, which added to the original language that

with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter [that waive sovereign immunity] ... shall apply to any claim arising out of assault, battery, false arrest, abuse of process, or malicious prosecution.

The underlying question in this appeal is whether any of the actions enumerated in the proviso of § 2680(h), may be maintained if the conduct complained of occurs while the officer is performing acts that are within the broad discretionary function exception of § 2680(a). We believe the legislative history and the language of the statute demonstrate that § 2680(a) and § 2680(h) are not mutually exclusive, however, because this case was decided on inadequate factual allegations which prevent us from evaluating the appellants' cause of action in light of the differing statutory policies, we remand this case to the District Court for further proceedings.

### Planting the Seeds:
### The Task of Statutory Construction

■ Our duty is to construe a statute consistent with the intent of Congress as expressed in the plain meaning of its language. "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Associations*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345, 1350–51 (1940). We begin, as we must, with an analysis of the text of the statute itself.[7]

---

**6.** 28 U.S.C. § 1346 speaks explicitly in terms of jurisdiction of the district courts although the predominant purpose appears more to be substantive—concerning when the government can be held liable and for which acts it is evident there is a waiver of traditional governmental sovereign immunity:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

> . . . . .

> (b) Subject to the provisions of chapter 171 of the title, the district courts, ... shall have exclusive jurisdiction of civil actions on claims against the United States for money damages, ... for injury or loss of property, or personal injury or death caused by the negli-

gent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Although this accounts for jurisdictional language in many of the court decisions, it is equally proper, as we do here, to speak in terms of waiver of sovereign immunity.

**7.** Although a wide-reaching waiver of sovereign immunity is itself a major policy, we should also bear in mind the general principle that "no action lies against the United States unless the legislature has authorized it." *Dalehite v. United*

Specific words within a statute, however, may not be read in isolation of the remainder of that section or the entire statutory scheme.

The FTCA was enacted for the purpose of waiving "the Government's immunity from actions for injuries to person and property occasioned by the tortious conduct of its agents acting within their scope of business." *Dalehite v. United States*, 346 U.S. 15, 27–28, 73 S.Ct. 956, 964, 97 L.Ed. 1427, 1436 (1953). Its passage grew out of "a feeling that the Government should assume the obligation to pay damages for the misfeasance of employees in carrying out its work." *Id.* at 24, 73 S.Ct. at 962, 97 L.Ed. at 1435. Satisfying that obligation, however, is not unqualified and there are certain categories of governmental activity to which the waiver of immunity does not apply.

Among those categories to which the waiver does not apply are claims arising from "discretionary functions" of the government. 28 U.S.C. § 2680(a). Thus, the government is not liable for any claim arising from the exercise "of discretion in the performance of governmental functions or duty 'whether or not the discretion involved be abused.'" *Dalehite*, 346 U.S. at 33, 73 S.Ct. at 966, 97 L.Ed. at 1439, quoting 28 U.S.C. § 2680(a); *see also United States v. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). We have held that a governmental decision that "entails balancing considerations of social, economic, or political policy" is discretionary within the meaning of § 2680(a). *Collins*, 783 F.2d at 1229. Indeed, we held that law enforcement decisions by U.S. Attorneys on when, where, and how to investigate, and whether to prosecute, fall within the ambit of the discretionary function exception. *Smith v. United States*, 375 F.2d 243, 247–48 (5th Cir.1967), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967).

On the other hand, we have not hesitated to conclude that such action does not fall within the discretionary function of § 2680(a) when governmental agents exceed the scope of their authority as designated by statute or the Constitution. For example, we recently held that violation of agency regulations represents conduct outside the discretionary function exception, and thus, outside sovereign immunity. *Collins*, 783 F.2d at 1230–31. *See also Bergmann v. United States*, 689 F.2d 789, 792 (8th Cir.1982) ("discretionary function exception inapplicable to allegations that government employees ignored or failed to comply with regulations or policies designed to guide their actions"); *Staton v. United States*, 685 F.2d 117 (4th Cir.1982) (holding that park ranger's shooting of a hunting dog was not a discretionary function despite federal regulation providing for such activity because ranger's discretion to shoot was eliminated by supervisor's order that all wild dogs should be captured, not killed). A government agent who departs from the duties of an investigator and embarks on an intentional abuse within the meaning of § 2680(h) similarly exceeds the scope of his authority and acts outside his discretion. One may hypothesize, the classic *Bivens*-style tort, in which a federal law enforcement officer uses excessive force, contrary to the Constitution or agency guidelines, which simply does not involve the exercise of discretion as that term has been applied under § 2680(a).

Section 2680(a) preserves governmental immunity for discretionary functions to protect the government from judicial second guessing. "Where there is room for policy judgment and decision there is discretion." *Dalehite v. United States*, 346 U.S. at 36, 73 S.Ct. at 968, 97 L.Ed. at 1441 (1953). While Congress intended to accept liability for injuries resulting from acts taken by government employees, it recognized the necessity of shielding certain governmental functions from review by the courts in tort-like damage suits.

The Supreme Court dealt with the breadth of the discretionary function excep-

States, 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427, 1438 (1953). Moreover, Congressional waivers of governmental immunity are to be construed in favor of the sovereign. *McMa-*

hon v. United States, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26, 30 (1951). *But see* note 9 and accompanying text *infra*.

tion in *Varig.* The Court held that the "nature and quality of the conduct" should be judged according to expressions of congressional intent of when to shield that conduct from tort liability. *Varig,* 467 U.S. at 813, 104 S.Ct. at 2765, 81 L.Ed.2d at 674. There is a very serious argument that the "nature and quality of the conduct" alleged by Sutton should fall outside the discretionary function exception since Congress has expressed its intent by waiving sovereign immunity in suits against federal investigative officers for malicious prosecution and abuse of process in § 2680(h).

Indeed, the District of Columbia Circuit recognized this when it identified the distinction in differing types of discretionary functions in *Gray* and held that not all discretionary acts are entitled to the protections of § 2680(a).

> There is, indeed, much validity to the distinction between routine execution of discretionary decisions and discretionary decisions themselves, with the discretionary function exception immunizing the latter but not the former.... [W]e must examine carefully the allegations made to determine whether they are sufficiently separable from protected discretionary decisions. If such separability exists, then the conduct ... may be actionable under the FTCA.

*Gray* at 515.

The second of the relevant provisions is the 1974 amendment to § 2680(h) known as the law enforcement proviso. Section 2680(h) initially excepted from the FTCA's waiver of sovereign immunity any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, or abuse of process. Thus, these enumerated torts were not actionable against the United States. In 1974, however, that statute was significantly amended by what became known as the "law enforcement proviso."

This amendment relinquished the previously retained sovereign immunity against claims arising out of these enumerated torts if the claim resulted from the act or omission of an investigative or law enforcement officer of the United States Government. At least standing by itself, the proviso in effect rendered actionable claims such as those asserted by Sutton and Mitchell—provided Woodard met the definitional standard of a law enforcement officer under § 2680(h).[8]

Congress amended § 2680(h) to expressly provide for suits against the government for acts of law enforcement officers constituting malicious prosecution, false arrest, false imprisonment, and abuse of process. We may safely presume Congress knew that existing law provided that decisions on when, where, and how to investigate and whether to prosecute were considered discretionary at the time Con-

---

**8.** Section 2680(h) defines a law enforcement officer as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." On remand, the District Court must make an explicit finding of whether Postal Inspector Woodard meets the § 2680(h) definition. Postal Inspectors may indeed be "investigative or law enforcement officers" as that term is defined by § 2680(h). Congress has granted to the Postal Service the power "to investigate postal offenses and civil matters relating to the Postal Service." 39 U.S.C. § 404(7). With this specific grant the Postal Service has, in turn, empowered the Inspection Service Department with the responsibility "for protection of the mails, enforcement of postal laws, plant and personnel security, postal inspection, and internal audits. The Inspection Service Department, in accordance with applicable policies, regulations, and procedures, carries out investigations and presents evidence to the Department of Justice and U.S. Attorneys in investigations of a criminal nature." 39 C.F.R. § 224.7 (1986). Additionally, Postal Inspectors are authorized to:

(1) Serve warrants and subpoenas issued under the authority of the United States;

(2) Make arrests without warrant for offenses against the United States committed in their presence; and

(3) Make arrests without warrant for felonies cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such a felony.

39 C.F.R. 233.1(a) (1986). The Postal Service may also authorize its employees to make searches for "mail matter" transported in violation of federal law, 39 U.S.C. § 603, and any Postal officer or employee is specifically authorized by 39 U.S.C. § 603 to seize postal matter carried contrary to law.

gress amended § 2680(h). It is equally clear that we should act under the assumption that Congress intended its enactment to have meaningful effect and must, accordingly, construe it so as to give it such effect.[9] *United States v. American Trucking Associations*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *National Bank of Elizabeth, New Jersey v. Smith*, 591 F.2d 223, 231 (3rd Cir.1979).

The government urges us to disregard these statutory construction principles as well as our own Circuit's precedent by holding that the United States is totally immune from suit for all claims arising out of the torts authorized in the law enforcement proviso when the conduct and acts constituting the tort are within the discretionary function. The government's construction of the statute would result in judicial repeal of the law enforcement proviso by rendering its authorization of suits for malicious prosecution, which frequently arise out of, or in connection with discretionary acts, superfluous.

█ The FTCA constitutes a waiver of sovereign immunity and should be construed carefully, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), but should not be construed so narrowly that it conflicts with the statute's express language or purpose. The proviso itself states that the FTCA's grant of jurisdiction to the federal courts for tort claims against the United States (hence the waiver of sovereign immunity) *"shall apply to*

*any claim"* arising out of the enumerated torts committed by a governmental law enforcement or investigative officer. Neither § 2680(a) or § 2680(h) exist independently of the other nor does one predominate over the other. Both sections recognize serious legitimate policies that must be preserved. What relief is and is not available under the FTCA necessarily requires a synthesis of the policies behind §§ 2680(a) and (h) as applied to the specific facts of each situation.

### *The Germination of a Nongermane Amendment: An Analysis of § 2680(h)*

The proviso was added to the FTCA in the Senate as a "nongermane" amendment [10] to H.Res. 8245, a bill which dealt primarily with the reorganization of the nation's drug enforcement efforts including, particularly the controversial "no knock" rule. Because the proviso was not germane to the House bill, there is little legislative history from the House regarding its intended effect. The Committee on Governmental Organization in the Senate, however, gave extensive attention to the proviso.

The Senate Committee report states that the proviso was added to the FTCA in response to "abusive, illegal, and unconstitutional 'no-knock' raids" engaged in by federal narcotics agents in the Collinsville raids [11] and in *Bivens*.[12] S.Rep. 93–588,

9. This Circuit has held as a "basic principle of statutory construction ... that 'a statute should not be construed in such a way as to render certain provisons superfluous or insignificant.'" *Woodfork v. Marine Cooks and Stewards Union*, 642 F.2d 966, 970–71 (5th Cir.1981), quoting *Zeigler Coal Company v. Kleppe*, 536 F.2d 398, 406 (D.C.Cir.1976).

10. A nongermane amendment is an amendment that does not pertain to the text or subject matter of the bill to which it is appended. Unlike that of the House, this practice is permitted by the rules of the Senate.

11. The primary motivation for amending the FTCA was the Drug Abuse Law Enforcement (DALE) raids in Collinsville, Illinois. Federal and State narcotics officers stormed into two separate homes of innocent people under their no-knock authority. Five, and eventually fif-

teen, shabbily dressed men stormed into the Giglotto's bedroom with their pistols drawn. "They threw him face down on his bed, tied his hands behind his back, and put a pistol to his head.... Evelyn Giglotto, clad only in a negligee, ... [was forced] into a similar position, while others searched the upstairs room." Boger, Gitenstein, and Verkuil, *The Federal Tort Claims Act Intentional Torts Amendment: An Interpretive Analysis*, 54 N.C.L.Rev. 497, 500 (1976). Thirty minutes later a similar raid by DALE agents took place. Both raids were in error. The victims of these raids had no means of recovery against the United States under existing law. These raids received wide publicity and were given extensive treatment by Congress. *See id.* at 500–507; 119 Cong.Rec. 23,242 (1973). The two victims even testified before the Senate Subcommittee. Hearings on Reorganization Plan No. 2 of 1973. Before Subcomm.

93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 2789, 2790. After observing that there was "no effective legal remedy against the Federal Government" for the intentional torts of its agents, the Committee went on to state that the law enforcement proviso

> should be viewed as a counterpart to the *Bivens* case and its progeny, in that it waives the defense of sovereign immunity *so as to make the Government independently liable in damages for the same type of conduct* that is alleged to have occurred in *Bivens*.

*Id.* at 2791 (emphasis added). The report continues that the proviso

> would submit the Government to liability *whenever* its agents act under color of law so as to injure the public through searches and seizures that are conducted without warrants or with warrants issued without probable cause. However, [the proviso] should not be viewed as limited to constitutional tort situations but *would apply in any case* in which a Federal law enforcement agent committed the tort while acting within the scope of his employment or under color of Federal law.

*Id.* (emphasis added).

The language of the Senate Report—which reflects an awareness of the outrageous conduct by federal law enforcement officers and the indignities to which law abiding citizens had been subjected—is categorical and unqualified. The government is to be liable *whenever* its agents commit constitutional torts and *in any case* in which a Federal agent commits acts which under accepted tort principles consti-

tute one of the intentional torts enumerated in the proviso. Significantly, neither the legislative history, nor the text of the proviso itself, makes reference to the discretionary function exception.[13] The Senate Committee Memorandum on No-Knock Legislation [14] did state:

> It is not the intention of this amendment to allow any other defenses [besides those in § 2680(h)] that may be available to individual defendants by state or federal law, custom or practice to be asserted [by] the government. Congress does not oppose, however, the assertion of defenses of good faith and reasonable belief in the validity of the search and arrest on behalf of individual government defendants, so long as it is understood that the government's liability is not co-terminous with that of the individual defendants.[15]

Congress intended to subject the government to liability in *Bivens*-type actions. Yet, if actions under the proviso must also clear the hurdle of the discretionary function exception, as the District of Columbia Circuit held in *Gray v. Bell*,[16] even *Bivens* and Collinsville would not pass muster and the law enforcement proviso would fail to create the effective legal remedy intended by Congress. This is so because, applying § 2680(a) as *Gray* holds, the agent's actions would comprehend the federal government's "decisions concerning enforcement of its criminal statutes [which] comprise a part of its pursuit of national policy." *Smith*, 375 F.2d at 247. The agents in those cases acted—albeit unconstitutionally—in furtherance of national

---

on Reorganization, Research, and International Organizations of the Senate Comm. on Governmental Operations, 93d Cong., 1st Sess., pt. 3, at 461, 475 (1973).

**12.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**13.** For an excellent detailed analysis of the legislative purpose and history of the law enforcement proviso, see Boger, Gitenstein, and Verkuil, *The Federal Tort Claims Act Intentional Torts Amendment: An Interpretive Analysis,* 54 N.C.L.Rev. 497 (1976). This article draws heavi-

ly on all of the materials available to the Senate Committees which are carefully documented and furnishes a vivid background reflecting how and why the proviso came into being and was enacted.

**14.** Senate Comm. on Gov't Operations, Memorandum on No-Knock Legislation, Aug. 28, 1973, *quoted in,* Boger, Gitenstein, & Verkuil, *supra* n. 13 at 514–15.

**15.** *Id.* at 5, *quoted in,* Boger, Gitenstein, & Verkuil, *supra* n. 13 at 515.

**16.** *See Gray,* 712 F.2d at 508.

drug enforcement policy. Their selection of the manner in which the search would be conducted, and their subsequent execution of that decision, clearly left sufficient "room for policy judgment and decision" to constitute a discretionary act under *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968, 97 L.Ed. at 1441.

 We cannot conceive of a circumstance in which the conduct of the agents in *Bivens* and Collinsville would not involve discretionary functions, yet under the rule set out in *Gray*, we find it equally difficult to conceive of a circumstance in which such conduct would be actionable.[17] We conclude, therefore, that if the law enforcement proviso is to be more than an illusory—now you see it, now you don't—remedy, the discretionary function exception cannot be an absolute bar which one must clear to proceed under § 2680(h).

### The Synthesis of Separate Elements

The District of Columbia Circuit sought to harmonize these two provisions in *Gray v. Bell*, 712 F.2d 490 (D.C.Cir.1983). On the facts of that case, the court held that the actions of the Justice Department prosecutors were too intertwined with their discretionary conduct to support a malicious prosecution claim under § 2680(h). That court did observe, however, that "it seems clear that the intentional torts listed under the proviso to section 2680(h) may be committed without exercise of a discretionary function." *Id.* at 507. Yet consistent with our holding in *Smith*, it is equally as clear that the intentional torts listed under the law enforcement proviso to § 2680(h) may be committed during the exercise of a discretionary function.

Similarly, the Second Circuit, concerned that the two provisions should not "be read to eviscerate each other," found that certain routine inspections by immigration officers were not discretionary and that § 2680(h) might therefore apply. *Caban v.*

*United States*, 671 F.2d 1230, 1234 (2d Cir.1982).

Later, the Ninth Circuit was confronted with a malicious prosecution claim against an IRS agent who claimed to have acted within his discretion. *Wright v. United States*, 719 F.2d 1032 (9th Cir.1983). The Ninth Circuit, did not address the conflict between §§ 2680(a) and (h) due to its planning/operational test for discretionary functions. *Id.* at 1035 ("We have ... limited [§ 2680(a)] to decisions made at a planning rather than an operational level.... The conduct of [the IRS agent] in implementing that decision ... is not immune as a discretionary function"). The Ninth Circuit, however, did reconcile the law enforcement proviso of § 2680(h) with the tax collection and assessment provision of § 2680(c) in *Wright*.

> Our duty in construing the tax collection and assessement exception of § 2680[(c)] and the later law enforcement proviso of § 2680[(h)] is to reconcile them and give meaning to both if we are able. This goal can be accomplished by construing the tax assessment and collection exception not to apply to Agent Fletcher's actions in carrying out the criminal prosecution against plaintiff, insofar as those acts are alleged to constitute malicious prosecution.... Our construction does violence to neither section and leaves each with a great deal of room to operate.

*Wright*, 719 F.2d at 1036.

### Separating the Shaft and Wheat: A Difficult Task

In this case, however, we may be confronted with the possibility of deciding the question left unresolved by the explicit holdings of the above cited cases: whether an action may be maintained under 28 U.S.C. § 2680(h) when the actionable tort was committed by a "law enforcement offi-

---

**17.** Boger, Gitenstein and Verkuil demonstrate in their article, *supra* n. 13, that if we applied the discretionary exception as broadly as *Gray,* no remedy would be available in any of the cases which prompted Congress to amend the FTCA. Both the Collinsville raids and *Bivens* arose out

of activities that were within the agents discretion. Congress expressly stated the purpose of the law enforcement proviso was to provide a remedy for victims of situations like *Bivens* and Collinsville.

cer" while performing a § 2680(a) "discretionary function."

The recent decision of the Third Circuit in *Pooler v. United States*, 787 F.2d 868 (3rd Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986), sheds light on this question. There the plaintiff asserted an FTCA claim charging that a police officer hired by the VA to root out illegal narcotics sales at one of its hospitals pursued a careless investigation and used an unreliable informant. The majority stated that, "when the sole complaint is addressed ... to the quality of the investigation as judged by its outcome, the discretionary function ... does apply." 787 F.2d at 871.

■ *Pooler* exonerated the government on this basis, and indeed, absent extremely compelling circumstances, an unsuccessful prosecution must generally be determined to warrant application of the discretionary function exception. However, *Pooler* specifically differentiated, as unprotected under § 2680(a), a case in which the investigative officer violated constitutional or federal statutory rights. The Third Circuit did not decide the relationship between the two sections as it limited the application of the law enforcement proviso of § 2680(h) to claims specifically arising out of the course of a search, seizure, or arrest. *Id.* at 872.

■■ Unlike the investigation in *Pooler*, Inspector Woodard's activities allegedly led not to one unsuccessful prosecution but to fifteen state court indictments, each of which resulted in dismissal of the charges, and to three failed attempts to obtain a federal indictment.[18] In addition, unlike *Pooler*, it is alleged that Inspector Woodard collaborated against appellants in state court proceedings and lent the authority of his office to influence or coerce the outcome in those proceedings. Thus, the "nature and quality of the conduct" alleged by Sutton may not fall within the discretionary function exception in consideration of Congress waiving sovereign immunity in suits against federal investigative officers for malicious prosecution in § 2680(h). *See Varig*, 467 U.S. at 813, 104 S.Ct. at 2764, 81 L.Ed.2d at 674. The nature and quality of intentional torts such as those in the law enforcement proviso may exceed the limits of law enforcement officers' discretion for which § 2680(a) immunizes the government. Without analysis of the detailed regulations reflecting the scope of authority governing Inspector Woodard's official behavior, we are unable to determine whether the pleadings demonstrate the applicability and scope of § 2680(a) in relation to the grant of potential liability under § 2680(h).

### The Result of an Otherwise Bountiful Harvest

■ Consistent with the Constitutionally mandated Article III case or controversy requirement, it is both impossible and certainly inappropriate for us to declare categorically—or try to state in a principled way—the circumstances in which either the discretionary function exception or the law enforcement proviso governs to the exclusion of the other. We do determine that the two sections must be read against the background in which they were enacted and balanced to effectuate both actions of Congress. Immunity was retained to protect necessary, but necessarily imperfect, functions of government involving discretion on policy judgments and decisions from tort inspired judicial scrutiny. The law enforcement proviso waives sovereign immunity and makes the United States responsible to citizens who are injured by law enforcement officers in situations like the Collinsville raids when relief was otherwise unavailable.[19] The Supreme Court provided the means to balance these interests in *Varig* by emphasizing the necessity of ex-

---

**18.** Section 2680(a) retains sovereign immunity for discretionary functions "whether or not the discretion involved be abused." Inspector Woodard's abuse by initiating multiple unsuccessful prosecutions bears little relevance to the discretionary nature of his conduct under § 2680(a).

**19.** The only relief available before the amendment was an action under *Bivens* against the law enforcement officer in his individual capacity.

amining the nature and quality of the agents conduct against the Congressional intent underlying the separate provisions of the FTCA.

It would be inappropriate and imprudent for us to analyze the nature and quality of the conduct of Investigator Woodard so as to harmonize the policies behind §§ 2680(a) and (h) on the barebones record before us. *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir.1985), should be followed both by this case on remand and for guidance of district courts facing this problem in the future. We there held that in cases involving governmental immunity the trial court is entitled to and must demand a specific detailed factual statement overcoming the possibility of governmental immunity. "Broadly worded complaints ... which leave[] to traditional pretrial depositions, interrogatories, and requests for admission the development of the real facts underlying the claim, effectively eviscerates important functions and protections of official immunity." *Id.* at 1476. Therefore, we require plaintiffs to "plead specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to negative the defense of qualified immunity." *Brown v. Texas A & M University*, 804 F.2d 327 (5th Cir.1986); *see also Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir.1987).

Governmental immunity is a threshold question which acts as a bar to a court's right to adjudicate the claim. It is a defense to the burdens of litigation, not just the burdens of liability. "Until this threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 411 (1982).

Harlow recognized ... that officials who enjoy absolute or qualified immunity should be protected, when possible, from the burdens of discovery as well as trial.... We recently complimented this principle in Elliott v. Perez ... by requiring a plaintiff to plead specific facts to

demonstrate why the official sued is not entitled to immunity. (Citations omitted).

*Austin Municipal Securities v. National Association of Securities Dealers*, 757 F.2d 676, 686 n. 8 (5th Cir.1985).

As this case ably demonstrates, the threshhold question of governmental immunity is not always answerable on general pleadings under F.R.Civ.P. 8. Trial courts ought not try to deal with this on motions under F.R.Civ.P. 12(b), when the proper disposition of the case requires some factual development by the parties. Instead, the court should use its pretrial powers to compel the parties to submit the problem by summary judgment. The summary judgment process, in which affidavits and depositions, both pro and con, are submitted will reveal exactly what facts exist, not just what the parties generally claim to exist. This is so even though the summary judgment process might make summary judgment unavailable by demonstrating a genuine issue of material fact exists.[20] At the same time the court must be mindful of the serious policy concerns expressed by this court and others in protecting the government against unnecessary discovery whenever possible. Permitting limited discovery for the purpose of providing the court with sufficient information to answer the threshhold question of governmental immunity is consistent with both the spirit and holding of *Harlow*.

The recent amendment to F.R.Civ.P. 11 provides federal trial judges with the ability—backed up by the prospect of substantial sanctions—to demand specific pre-trial inquiry by attorneys and parties to ensure that lawsuits are well grounded in fact. "[I]n a case ostensibly raising the probable question of immunity, counsel for the plaintiff is affirming that, after making reasonable inquiry, he believes in good faith that the defendant official cannot successfully show he has the defense of immunity." *Elliott v. Perez*, 751 F.2d at 1481. The District Court also has available to it a

---

**20.** F.R.Civ.P. 56(c); *see also, Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lane v. Celotex Corp.,* 782 F.2d 1526 (11th Cir.1986); *Fontenot v. UpJohn Co.,* 780 F.2d 1190 (5th Cir.1986).

motion under F.R.Civ.P. 12(e) for more definite statement under which the court can require that a plaintiff specifically set forth the particular facts which establish his right to recovery including those facts which support his contention that the defense of immunity cannot be sustained. *Id.* at 1482.

■ The disposition of our case does not permit us to determine (i) whether Inspector Woodard is an investigative law enforcement officer within the definition § 2680(h); (ii) whether, and to what extent, his conduct fell within the discretionary functions exception under § 2680(a); and (iii) whether any one or more of the agents committed acts to support a cause of action for malicious prosecution or abuse of process under state law.[21] To answer these questions on the basis of the sketchy allegations before us would require us to match our imaginations against the chimerical nature of actual litigation. Thus, the District Court's dissolution of the case under F.R.Civ.P. 12 was premature and the case must be remanded for further proceedings. The trial court must examine more specifically pleaded facts against the legislative purposes of sections 2680(a) and (h) to determine whether the nature and quality of the conduct specifically set forth is of the type which Congress intended to include in permitting claims for some intentional torts including malicious prosecution, or is the nature and quality for which Congress intended to retain its immunity for acts involving discretionary functions.

Any specific analysis on the bare allegations before us would run the risk of making declarations of law on something that might never be. As "[v]itally important to the public good as is the doctrine of ... immunity, we ought not imperil its application or undermine its strength by opinions expressed on situation or circumstances which may never have occurred." *Elliott,* 751 F.2d at 1482. The trial court is charged with the obligation of giving effect to both sections in accordance with their legislative purpose. We do not indicate that such a construction would require repeal of part of either § 2680(a) or § 2680(h), but once it is determined that an actual conflict between the sections is actually presented, they must be reconciled to achieve the legislative purpose expressed in the words of the statute and in light of existing law and policy behind the statute. Moreover, our purpose is not to ignore the significance of the discretionary function exception, rather it derives from a consideration of the statute's logic and history.

*A Time For Reflection/Analysis*

We cannot, with judicial safety, declare which, if any, acts are within § 2680(a) or § 2680(h), nor could the trial judge. We must remand so the trial court can compel a detailed factual presentation as required by *Elliott* and F.R.Civ.P. 11, and then determine precisely the extent to which § 2680(a) or § 2680(h) prevail on the specific claims made by the plaintiff.

REVERSED AND REMANDED.

---

**21.** This court has held that the elements of the § 2680(h) tort of malicious prosecution is determined under state law, in this case Texas law. Section 2680(h) incorporates section 1346(b), establishing government liability on a basis comparable to that of the law of the state in which the tort occurred. *See Brown v. United States,* 653 F.2d 196, 201 (5th Cir.1981), citing *Carlson v. Green,* 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15, 26 (1980). *But see Norton v. United States,* 581 F.2d 390 (4th Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978); *Caban v. United States,* 728 F.2d 68, 72 (2d Cir.1984). This circuit has not yet determined (i) whether incorporation of state law implies the adoption of limitations such as a privilege defense applicable to law enforcement officers, *Arnsberg v. United States,* 757 F.2d 971 (9th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); *Caban v. United States,* 728 F.2d at 73, or (ii) whether the United States may avail itself of any qualified immunity defense that may be raised by Inspector Woodard himself. *Norton v. United States,* 581 F.2d at 397, *Caban,* 728 F.2d at 75 (Friendly, J., concurring). These issues have not been briefed and therefore remain open on remand.

We attribute the consistent inconsistency of the modes of analyzing § 2680(h) among the circuits, primarily to the apparent failure of the government to adopt an authoritative approach to the application of the two sections other than the simple, untutored reflex of no liability under either section. This deficiency cries out for a remedy, lest the courts have to stumble, unaided by principled advocacy, into an ultimate decision distilled from a LEXIS or Westlaw list of hundreds of cases on a hit or miss basis.

EDITH H. JONES, Circuit Judge, concurring:

I write separately to emphasize what I believe is most salient in the majority's careful exposition of 28 U.S.C. §§ 2680(a) and (h): these sections of the FTCA must be harmonized. In achieving harmony, a task made no simpler by Congress's draftsmanship and the sketchy legislative history of the law enforcement proviso, it is not necessary to conclude with the majority that "even *Bivens* and Collinsville would not pass muster" if the law enforcement proviso, § 2680(h), is subject to the discretionary function exception, § 2680(a). As the majority elsewhere observe, this court has held that violations of agency regulations do not fall within the discretionary function exception so as to immunize the federal government from tort liability. *See,* e.g., *Collins v. United States,* 783 F.2d 1225 (5th Cir.1986).

What I believe will require particular sensitivity in this task of statutory construction is preserving prosecutorial and discretionary law enforcement immunity. *Compare Smith v. United States,* 375 F.2d 243 (5th Cir.), *cert. denied,* 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967) (decisions on when, where and against whom to prosecute are discretionary under § 2680(a)); *Gray v. Bell,* 712 F.2d 490, 505 (D.C.Cir. 1983) ("Although the concepts of 'discretion' in official immunity law and under the FTCA are not of identical scope, they are similar and may have a common origin"). In law enforcement, while the opportunities for government abuse abound, the incentive for oppressive use of FTCA lawsuits is powerful and pervasive. What better way to "get even" with one's accuser than to file suit against the government on account of his investigatory conduct? Such lawsuits are hardly less deleterious to conscientious law enforcement than are actions seeking to impose personal liability, because they equally threaten careers and reputations, divert official time and resources, and imperil impartial decisionmaking. The doctrines of absolute prosecutorial and qualified official immunity from personal liability are essential to shield the law enforcement community from unwarranted interference with their vital functions. *See Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The discretionary function exception to the Federal Tort Claims Act should perform a similar role as the courts continue to interpret the law enforcement proviso. The panel's use of the *Elliott v. Perez* pleading standard in cases involving §§ 2680(a) and (h) is a step in the direction of creating the necessary harmony.