**FRIENDS OF THE EARTH, INC., Plaintiff,**

v.

**CHEVRON CHEMICAL COMPANY, Defendant.**

**Nos. 1:94CV434, 1:94CV580.**

United States District Court,
E.D. Texas,
Beaumont Division.

May 12, 1995.

Bruce J. Terris, Carolyn Smith Pravlik and Linda C. Schneider all of Terris, Pravlik and Wagner, Washington, DC, for plaintiff.

James E. Smith of Beirne, Maynard and Parsons, L.L.P., Houston, TX, for defendant.

*MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT ON DEFENDANT'S OFFER OF JUDGMENT*

SCHELL, Chief Judge.

Before this court is Plaintiff's "Motion for Declaratory Judgment that Defendant's Offer of Judgment is Null and Void as Contrary to Federal Law" filed on March 28, 1995. Defendant filed a response to Plaintiff's motion on April 7, 1995. Subsequently, Plaintiff filed a reply to Defendant's response on April 13, 1995. Upon consideration of the motion, response, reply and accompanying memoranda of law, this court is of the opinion that Plaintiff's motion should be GRANTED.

On July 18, 1994, Plaintiff filed this private civil enforcement action against Chevron Chemical Company pursuant to Section 505 of the Federal Water Pollution Control Act ("FWPCA"). 33 U.S.C.S. § 1365. Under the provisions of the FWPCA, Defendant received several National Pollutant Discharge Elimination System ("NPDES") permits from the E.P.A. for its polyethylene plant located in Orange, Texas. However, Plaintiff alleges that Defendant's pollutant discharges for the Orange plant exceeded the permit restrictions in contravention of Sections 301(a), 308(a) and 402 of the FWPCA. 33 U.S.C. §§ 1311(a), 1318(a), 1342.

In response to Plaintiff's suit, Defendant made an offer of judgment to Plaintiff pursuant to the Civil Justice Expense and Delay Reduction Plan for the Eastern District of Texas ("the Plan"). However, Plaintiff challenges the validity of Defendant's offer of judgment through this Motion for Declaratory Judgment. Specifically, Plaintiff argues that: 1) the offer of judgment provision is inconsistent with the Federal Rules of Civil Procedure and, therefore, invalid; and 2) the offer of judgment provision applied to a citizen suit of this nature would frustrate the substantive policies of the FWPCA.

## THE CIVIL JUSTICE REFORM ACT'S RELATIONSHIP WITH THE RULES ENABLING ACT AND THE FEDERAL RULES OF CIVIL PROCEDURE

The Civil Justice Reform Act ("CJRA") provides that each United States District Court must develop a civil justice expense and delay reduction plan which facilitates the deliberate adjudication of civil cases on the merits, monitors discovery, improves litigation management, and ensures just, speedy, and inexpensive resolutions of civil disputes. In response to the CJRA, the Plan was enacted.

■ The gravamen of Plaintiff's first argument is that because the Plan's offer of judgment provision is inconsistent with Rule 68 of the Federal Rules of Civil Procedure it is invalid under Rule 83. Plaintiff reasons that because the Civil Justice Reform Act ("CJRA") did not repeal or preempt the Rules Enabling Act ("REA"), the Plan is subject to the limitations found in the Federal Rules of Civil Procedure. Particularly, Plaintiff contends that the Plan is subject to Rule 83 which invalidates local rules or procedures that are inconsistent with the Federal Rules of Civil Procedure. Hence, Plaintiff argues that the Plan's offer of judgment provision [1] is invalid under Rule 83 because it is inconsistent with Rule 68, which also contains an offer of judgment provision. While it is clear that the Plan's offer of judgment provision differs from and goes beyond the provisions of Rule 68, this fact does not render the Plan invalid. Because the Plan was enacted pursuant to the CJRA, which is independent of the REA and the Federal Rules of Civil Procedure, the Plan is not bound by Rule 83.

Clearly, Congress has the power to regulate the practice and procedure of federal courts. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9, 61 S.Ct. 422, 424, 85 L.Ed. 479 (1941). Likewise, Congress "may exercise that power by delegating to [the Supreme Court] or other federal courts authority to make rules not inconsistent with the statutes or Constitution of the United States...." *Id.* (emphasis added). Originally, Congress partially delegated its power to prescribe rules of court procedure to the Supreme Court through the Rules Enabling Act. 28 U.S.C.

---

1. The Plan offer of judgment provision is set forth in pertinent part as follows:

    At the Management Conference or anytime thereafter, a party may make a written offer of judgment. If the offer of judgment is not accepted and the final judgment in the case is of more benefit to the party who made the offer by 10%, then the party who rejected the offer must pay the litigation costs incurred after the offer was rejected. In personal injury and civil rights cases involving contingent attorneys' fees, the award of litigation costs shall not

exceed the amount of the final judgment. The Court may, in its discretion, reduce the award of litigation costs in order to prevent undue hardship to a party.

"Litigation costs" means those costs which are directly related to preparing the case for trial and actual trial expenses, including but not limited to reasonable attorneys' fees, deposition costs and fees for expert witnesses.

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CIVIL JUSTICE EXPENSE AND DELAY REDUCTION PLAN, Art. 6, § 9 (1994).

§§ 2071–2077 (1992). Pursuant to this grant, the Supreme Court has constructed the Federal Rules of Civil Procedure. Within the Federal Rules of Civil Procedure, Rule 83, in tandem with 28 U.S.C. § 2071, permits district courts to prescribe local rules of procedure; however, these local rules may not be inconsistent with the Federal Rules of Civil Procedure. Fed.R.Civ.P. 83.

Nevertheless, the fact that Congress enacted the Rules Enabling Act does not preclude Congress from making further delegations of rulemaking power through legislation. Consequently, in 1990, Congress made a second delegation of its rulemaking power to federal district courts in the form of the Civil Justice Reform Act. *See* S.Rep. No. 416, 101st Cong., 2nd Sess., *reprinted in* 1990 U.S.C.C.A.N. 6802, 6813–15.

■ The actual relationship between the CJRA, the REA and the Federal Rules of Civil Procedure has not been delineated by Congress or the Supreme Court. Thus, this court is left with the task of defining this relationship. In determining the effect of the CJRA, this court must first look to the "plain language of [the] statute." *See Stone v. Caplan (In re Stone)*, 10 F.3d 285, 289 (5th Cir.1994). However, the language of the CJRA makes no reference to the REA and offers no guidance in defining its relationship with the REA. When a statute is ambiguous or offers no guidance to the legislators' intent, a court may look behind the words of the statute to the legislative history. *See United States v. Fitzhugh*, 984 F.2d 143, 146 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 259, 126 L.Ed.2d 211 (1993).

The legislative history surrounding the CJRA strongly suggests that Congress intended to delegate rulemaking authority to district courts uninhibited by the REA or the Federal Rules of Civil Procedure. The CJRA evolved during several periods of revision. *See* S.Rep. No. 416, 101st Cong., 2nd Sess., *reprinted in* 1990 U.S.C.C.A.N. 6802, 6805–08. In its original form, any plan or rule formulated under the CJRA was subject to the REA. *See* S. 2027, 101st Cong., 2nd Sess. § 3 (Subchapter I (Section 471(a)(3))) (1990). Specifically, Senate Bill 2027 provided that: "Each United States district court shall implement its civil justice expense and delay reduction plan by local rule in accordance with the provisions of section 2071 of this title." *Id.* This is of great significance because 28 U.S.C.S. 2071(a) states that any rule promulgated under Section 2071 must be "consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title." 28 U.S.C. § 2071(a). However, it is important to note that this language was withdrawn and omitted from the enacted CJRA. The intentional deletion of the "section 2071" language indicates that Congress did not intend the CJRA to be bound by the REA.

Along with the deletion of the Section 2071 limiting clause, the remaining legislative record suggests that the CJRA is a rulemaking mechanism beyond the constraints of the REA. The legislative history indicates that Congress felt that a change in civil procedure was needed and that the REA was incapable of effecting that change and achieving the goals of the CJRA.[2] *See* S.Rep. No. 416, 101st Cong., 2nd Sess., *reprinted in* 1990 U.S.C.C.A.N. 6802, 6815–16. Thus, Congress enacted the CJRA and established a new mechanism for district courts to enact rules which "facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes." 28 U.S.C.S. § 471 (Supp. 1994).

To achieve these goals, "[the CJRA] promulgates a national strategy and national framework for attacking the cost and delay problem, while implementing that strategy through a policy of decentralization." S.Rep. No. 416, 101st Cong., 2nd Sess., *reprinted in* 1990 U.S.C.C.A.N. 6802, 6804. Hence, the CJRA allows reform to develop from "the

---

**2.** It appears that Congress felt that the faculties and benefits of the legislative process were also needed to develop effective expense and delay reduction plans. *See* S.Rep. No. 416, 101st Cong., 2nd Sess., *reprinted in* 1990 U.S.C.C.A.N. 6802, 6816. To ensure that the benefits of the legislative process are realized, the CJRA demands the input of local advisory groups. *Id.* at 6815.

bottom up" and offers district courts the autonomy to enact expense and delay reduction plans which are individualized to the needs of the local area. *See Id.* at 6817–18. By utilizing these concepts, Congress granted district courts the ability to cultivate new and innovative procedural concepts and techniques to diminish delay and expense in litigation. *See Id.* at 6817–19.

It would seem antithetical to the goals of the Civil Justice Reform Act to suggest that a plan promulgated under the CJRA is bound by Rule 83. The imposition of Rule 83 upon the CJRA would likely hamstring and stifle innovation. To fence any CJRA plan wholly within the boundaries of the Federal Rules of Civil Procedure could only lead to variations or iterations of the existing rules found in the Federal Rules of Civil Procedure—the same rules which had been presumably ineffective at reducing delay and expense so as to inspire Congress to pass the CJRA. Such a result would be contrary to the language of the CJRA. Furthermore, the legislative history accompanying the CJRA does not reflect any intent of Congress to bind the Civil Justice Reform Act by those provisions prescribed by the Supreme Court under the Rules Enabling Act. Thus, it appears that Congress has given district courts the ability to prescribe rules of procedure, within the confines of 28 U.S.C. § 471, through a mechanism unconstrained by the Federal Rules of Civil Procedure.

■ Holding that the Civil Justice Reform Act provides an independent basis beyond the REA for procedural rulemaking, the next question is whether the Plan's offer of judgment provision is a legitimate exercise of the CJRA's delegation of rulemaking authority.

The CJRA does not explicitly recommend or mandate the enactment of offer of judgment provisions. In 28 U.S.C.S. § 473, the CJRA enunciates eleven specific principles, guidelines and techniques for litigation management and cost and delay reduction which should be considered in formulating a civil justice expense and delay reduction plan. 28 U.S.C.S. § 473 (Supp.1994). In addition to these specific principles, Section 473(b)(6) provides a twelfth catch-all provision. Particularly, Section 473(b)(6) states,

> In formulating the provisions of its civil justice expense and delay reduction plan, each United States district court ... shall consider and may include the following litigation management and cost and delay reduction techniques: **such other features as the district court considers appropriate after considering the recommendations of the advisory group referred to in section 472(a) of this title.**

28 U.S.C.S. § 473(b)(6) (Supp.1994) (emphasis added).

Following the explicit language found in Section 473(b)(6), the court believes that Section 473(b)(6) allows and sanctions the Plan's offer of judgment provision. In interpreting a statute, "[a] statute should not be construed in such a way as to render certain provisions superfluous or insignificant;" therefore, the court will assume that Section 473(b)(6) was included for a purpose and is not meaningless. *Sutton v. United States,* 819 F.2d 1289, 1295 & n. 9 (5th Cir.1987) (quoting *Woodfork v. Marine Cooks and Stewards Union,* 642 F.2d 966, 970–71 (5th Cir.1981)). In determining the meaning of Section 473(b)(6), the court must ascertain the legislature's intent. "The most certain expression of legislative intent in nearly every instance is the words of the subject statute." *Hammers v. Internal Revenue Service (In re Hammers),* 988 F.2d 32, 34 (5th Cir.1993). When the words of the statute are expressed in reasonably plain language and are unambiguous, "the language must ordinarily be regarded as conclusive." *Negonsott v. Samuels,* —— U.S. ——, —— —— ——, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993); *Stone v. Caplan (In re Stone),* 10 F.3d 285, 289 (5th Cir.1994).

■ This court is of the opinion that the language of Section 473(b)(6) is clear and unambiguous. Section 473(b)(6) allows a court to consider and enact techniques other than those listed in the body of Section 473.[3]

---

3. Several commentators have been critical of this court's interpretation and the Plan's offer of judgment provision. *See* Lauren Robel, *Frac-*

*tured Procedure: The Civil Justice Reform Act of 1990,* 46 Stan.L.Rev. 1447, 1464–70 (1994); Carl Tobias, *Recalibrating the Civil Justice Reform Act,*

Obviously, this statute does not offer a court carte blanche; rather, such techniques must further the principles and purpose of the Civil Justice Reform Act. Accordingly, such techniques should "facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolution of civil disputes." 28 U.S.C.S. § 471 (Supp.1994). Because the Plan's offer of judgment provision facilitates the deliberate adjudication of civil cases on the merits, improves litigation management, and ensures the just, speedy, and inexpensive resolution of civil disputes, the offer of judgment provision is a valid exercise of the rulemaking authority conveyed by the CJRA.

## OFFER OF JUDGMENT APPLICABILITY TO CITIZEN SUITS

■ In the alternative, Plaintiff argues that even if the offer of judgment provision is valid under the CJRA, the offer of judgment provision should not be applied to citizen suits under the FWPCA. Plaintiff primarily argues that enforcement of an offer of judgment would directly conflict with and frustrate the purpose of citizen suits under the FWPCA.

The court is in agreement with Plaintiff concerning the importance of citizen suits under the FWPCA. In bringing legitimate citizen suits, citizens are performing an important public service. S.Rep. No. 414, 92nd Cong., 2nd Sess., *reprinted in* 1972 U.S.C.C.A.N. 3668, 3747. Thus, "citizens

should be unconstrained to bring these actions," and courts "should not hesitate to consider them." *Id.* at 3746.

Several policy interests are at play in this action, and the purpose of the offer of judgment provision must be considered in context with the purpose of the FWPCA's citizen suit provision. The Plan's offer of judgment provision is an effective mechanism for encouraging settlement and forcing parties to take a realistic view of their cases. Being an integral part of this district's expense and delay reduction plan, the offer of judgment provision advances important policy interests. However, the court must also consider the policy implications associated with citizen suits.

In an action brought under 33 U.S.C. § 1365, a Plaintiff is acting as a private attorney general performing a public service. These suits are penal in nature, and Section 1365 was enacted for the purposes of civil enforcement. In performing this public service, a citizen has no profit interest; rather, a citizen may only be reimbursed for her costs and attorney's fees. Any damage award is remitted to the U.S. Treasury. Thus, a citizen who brings a suit under Section 1365 is usually following altruistic intentions. To place upon these citizen plaintiffs the speculative hazard of paying a Defendant's attorney's fees and costs would likely have an undesirable effect. Such a hazard would have a chilling effect upon citizens bringing enforcement actions under Section 1365. Indubitably, this would eviscerate the effectiveness of Section 1365.

30 HARV.J. ON LEGIS. 115, 126–27 (1993). However, this court disagrees with the aforementioned views. When the language of a statute is unambiguous, "the court does not look beyond its express terms." *United States v. Evinger,* 919 F.2d 381, 383 (5th Cir.1990). This rule of construction is bypassed only in rare and exceptional circumstances such as when the legislative history clearly shows a contrary legislative intent. *Ardestani v. I.N.S.,* 502 U.S. 129, 136, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). In this case, a clear, contrary intent cannot be gleaned from the legislative history. Even the detractors of this view concede this point. *See* Robel, *supra* at 1469.

While the Congressional reports contain interpretive statements about other sections of the CJRA, no significant interpretative statements exist for Section 473(b)(6). The committee reports simply state: "Finally, subsection (b)(6) allows each district court to consider any other provisions that it considers appropriate after considering the recommendations of its advisory group." S.Rep. No. 416, 101st Cong., 2nd Sess., *reprinted in* 1990 U.S.C.C.A.N. 6802, 6848.

The remaining legislative history is concordant with this court's interpretation of Section 473. One of the cornerstone principles behind the CJRA was the principle of building reform from the "bottom up." *Id.* at 6817. While Congress has set forth the national strategy in the CJRA, the achievement of that strategy is attained through a policy of decentralization. *Id.* at 6804. Hence, the CJRA allows the actual techniques to be developed at the local level.

In bringing this suit, Plaintiff is not seeking personal redress; rather, Plaintiff is standing in the shoes of the government and performing a public service. Civil actions of this nature are substantially different from common civil actions, and offers of judgment would have an irregular dynamic effect upon litigants in these actions. To employ the offer of judgment provision in this situation would be inappropriate and would not effectuate the goals of the CJRA. Consequently, Defendant's offer of judgment should not be enforceable.

The Plan provides this court with the discretion to limit the effect of an offer of judgment. Specifically, the plan provides that a court "may, in its discretion, reduce the award of litigation costs in order to prevent undue hardship to a party." UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, CIVIL JUSTICE EXPENSE AND DELAY REDUCTION PLAN, Art. 6, § 9 (1994). In the opinion of this court, Defendant's offer of judgment would create an undue hardship upon the plaintiff. Furthermore, the court rejects the applicability of the offer of judgment provision to citizen suits brought under 33 U.S.C. § 1365.

It is, therefore, ORDERED that Plaintiff's Motion for Declaratory Judgment is GRANTED and Defendant's offer of judgment is void.